# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY<br><br>    Plaintiff<br><br>v.<br><br>INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS - TRANSPORTATION DIVISION, ET AL.<br><br>    Defendants | Case No.: 21-cv-5622<br><br>Judge Manish S. Shah<br>Mag. Sheila M. Finnegan |

## SMART-TD'S ANSWER AND VERIFIED COUNTERCLAIM FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF UNDER THE RAILWAY LABOR ACT

Pursuant to Fed. R. Civ. P. 12, Defendant/Counterclaimant the International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division ("SMART-TD" or "the Union"), by and through counsel, states the following in response to the allegations contained in the Complaint:

1. With respect to the allegations contained in Paragraph 1, SMART-TD admits only that Norfolk Southern Railway Company ("Norfolk Southern") has brought a civil action against it, the Brotherhood of Locomotive Engineers and Trainmen, and the Brotherhood of Maintenance of Way Employees, under the Declaratory Judgment Act and the Railway Labor Act ("RLA"). SMART-TD denies that Plaintiff has any basis for any claim against it. Any and all other allegations are denied.

1

2. With respect to the allegations contained in Paragraph 2, SMART-TD admits only that Norfolk Southern has announced a vaccine mandate requiring the vaccination of employees by December 8, 2021. Any and all other allegations are denied.

3. SMART-TD admits the allegations contained in Paragraph 3.

4. With respect to the allegations contained in Paragraph 4, SMART-TD admits that it disagrees that Norfolk Southern has the right to unilaterally impose a vaccine mandate and to implement terms for compliance. SMART-TD further admits that a live case or controversy exists with respect to the vaccine mandate and Norfolk Southern's terms imposed by it with respect to compliance with the mandate. Any and all other allegations are denied.

5. SMART-TD admits the allegations contained in Paragraph 5.

6. SMART-TD admits the allegations contained in Paragraph 6.

7. SMART-TD admits the allegations contained in Paragraph 7.

8. SMART-TD admits the allegations contained in Paragraph 8.

9. With respect to the allegations contained in Paragraph 9, SMART-TD admits that this Court has jurisdiction to issue declaratory judgment and injunctive and other relief under the RLA. SMART-TD denies any allegation contained in Paragraph 9 that Norfolk Southern is entitled to any such relief.

10. SMART-TD admits the allegations contained in Paragraph 10.

11. SMART-TD admits the allegations contained in Paragraph 11.

12. With respect to the allegations contained in Paragraph 12, SMART-TD admits that it is a party to collective-bargaining-agreements with Norfolk Southern, and those agreements contain express and implied terms.

13. SMART-TD denies the allegations contained in Paragraph 13.

14. SMART-TD denies the allegations contained in Paragraph 14.

15. With respect to the allegations contained in Paragraph 15, SMART-TD admits said allegations only to the extent that Norfolk Southern has made certain changes to its operations with respect to acts of Congress or by actions by administrative agencies with jurisdiction to promulgate regulations applicable to Norfolk Southern's operations, many of which were urged and supported by Norfolk Southern itself. Any and all other allegations are denied.

16. With respect to the allegations contained in Paragraph 16, SMART-TD admits said allegations only to the extent that Norfolk Southern has made certain changes to its operations with respect to acts of Congress or by administrative agencies with jurisdiction to promulgate regulations applicable to Norfolk Southern's operations, many of which were urged and supported by Norfolk Southern itself. Any and all other allegations are denied.

17. SMART-TD denies that any implicit authority exists permitting Norfolk Southern to enact the vaccine mandate at issue. To the extent allegations contained in Paragraph 17 contain legal conclusions, no response is required. To the extent a response is required, SMART-TD denies the allegations.

18. SMART-TD admits CBAs between it and Norfolk Southern allow it to submit claims that can be progressed to arbitration if there is a CBA violation. SMART-TD denies the remaining allegations contained in Paragraph 18.

19. SMART-TD admits the allegations contained in Paragraph 19.

20. SMART-TD admits the allegations contained in Paragraph 20.

21. The allegations contained in Paragraph 21 contain legal conclusions, no response is required. To the extent a response is required, SMART-TD denies the allegations.

22. SMART-TD admits the allegations contained in Paragraph 22 to the extent that Norfolk Southern made an announcement that it was requiring all employees to be vaccinated against COVID-19 except where an accommodation is required. SMART-TD denies the remaining allegations or inferences contained in Paragraph 22.

23. SMART-TD denies the allegations contained in Paragraph 23,

24. With respect to the allegations contained in Paragraph 24, SMART-TD admits that it disagrees that Norfolk Southern has the right to unilaterally impose a vaccine mandate and to implement terms for compliance, and that such action by Norfolk Southern is a major dispute under the RLA.

25. SMART-TD admits the allegations contained in Paragraph 25.

26. The allegations contained in Paragraph 26 relate or refer to statements made by another labor organization. Accordingly, no response from SMART-TD is required.

27. The allegations contained in Paragraph 27 relate or refer to statements made by another labor organization. Accordingly, no response from SMART-TD is required.

28. SMART-TD denies the allegations contained in Paragraph 28.

29. SMART-TD reincorporates its responses in Paragraphs 1-28.

30. With respect to the allegations in Paragraph 30, to the extent Norfolk Southern has accurately restated the law regarding "minor" disputes, no response is necessary. Any and all other remaining allegations are denied.

31. With respect to the allegations contained in Paragraph 31, SMART-TD only admits that a dispute exists. Any and all other allegations are denied.

To the extent not specifically admitted to above, any and all allegations are hereby denied.

SMART-TD denies that Norfolk Southern is entitled to any of the relief sought in its Prayer for Relief.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

SMART-TD has not made any strike threat.

### THIRD DEFENSE

The Court is without jurisdiction to grant injunctive relief herein by virtue of the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq*. Plaintiff failed to comply with the obligations imposed by law prior to unilaterally instituting major changes in working conditions involved in this labor dispute, has failed to exhaust the available governmental machinery of mediation through the National Mediation Board ("NMB"), has failed to comply with the status quo provisions of Sections 2 Seventh and 6 of the RLA, 45 U.S.C. §§ 152

Seventh, 156, and has failed to comply with its duty to exert every reasonable effort to make and maintain agreements under Section 2 First of the RLA, 45 U.S.C. § 152, First, and is therefore precluded by the provisions of the Norris-La Guardia Act, and particularly Section 8 thereof, 29 U.S.C. § 108, from obtaining the relief sought herein or any injunctive relief.

## **FOURTH DEFENSE**

The underlying dispute is properly characterized as a "major dispute" under Sections 2 and 6 of the RLA, 45 U.S.C. §§ 152 and 156.

## VERIFIED COUNTERCLAIM FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF UNDER THE RAILWAY LABOR ACT

Defendant/Counterclaimant SMART-TD submits the following as and for its counterclaim for declaratory and injunctive relief against Defendant Norfolk Southern.

Plaintiffs, the Transportation Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers; (hereinafter referred to as "SMART-TD" or "Plaintiff") seeks declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief against Defendant Norfolk Southern Railway ("Norfolk Southern" or "the Carrier").

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 (declaratory judgments), 1331 (federal question), and 1337 (Act regulating commerce, *viz.*, the Railway Labor Act, 45 U.S.C. § 151, *et seq.*).

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c) because Norfolk Southern operates through this judicial district, and because Norfolk Southern is subject to personal jurisdiction here.

3. SMART-TD, formerly United Transportation Union, is the duly authorized representative for the purposes of the Railway Labor Act ("RLA") of the crafts or classes of train service employees, including Conductors, Brakemen, and Switchmen, employed by Norfolk Southern, and is a "representative" as defined by Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth. SMART-TD is located at 24950 Country Club Boulevard, Ste. 340, North Olmsted, Ohio 44070.

4. Norfolk Southern is a corporation engaged in the interstate transportation of goods by rail, and is a "carrier" as defined by Section 1 First of the RLA, 45 U.S.C. § 151 First.

Norfolk Southern has its principal operating office at 1200 Peachtree Street, NE, Atlanta, Georgia, 30309, and operates within this judicial district.

## CLAIM FOR RELIEF

5. Collective bargaining between railroads and their employees' representatives over rates of pay, rules and working conditions is governed by the RLA. Collective-bargaining agreements ("CBA") thereunder are amended through the service of written notice of intended changes in agreements affecting rates of pay, rules or working conditions, pursuant to Section 6 of the RLA, 45 U.S.C. § 156. Such proposals, called "Section 6 Notices," are negotiated in conferences between representatives designated and authorized by the carrier or carriers, and by the collective bargaining representative(s) of their employees. 45 U.S.C. §§ 152 Second, 156. If conferences fail, the dispute is subject to mediation by the NMB. 45 U.S.C. § 155 First. If mediation fails, the President of the United States may appoint an emergency board ("PEB") to investigate and issue recommendations for settlement of the dispute. 45 U.S.C. § 160. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

## The Status Quo Requirement under the Railway Labor Act

6. The RLA governs labor relations in the railroad industry. The principal purpose of the RLA is to "avoid any interruption to . . . the operation of any carrier ..." 45 U.S.C. § 151a(1).

7. Section 2 First of the RLA, provides:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First.

8. The RLA mandates a very specific procedure to change working conditions. Section 6 of the RLA, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

45 U.S.C. § 156.

9. Taken together, these sections of the RLA require carriers to maintain the status quo with respect to rates of pay, rules, and working conditions until the mandatory notice, negotiation, and mediation procedures of the Act are completed.

10. Federal courts are empowered to issue injunctions to stop unilateral action by a rail carrier during this process of resolution.

### The Current Collective Bargaining Picture

11. SMART-TD and Norfolk Southern are parties to several agreements that control and detail the terms and conditions of employment for the class and/or craft of train service employees represented by SMART-TD, and also to various work practices which have become an integral and implicit part of those agreements though not set forth therein.

### COVID-19 Vaccine Mandate for Federal Contractors

12. On September 9, 2021, President Biden issued an executive order directing "[e]xecutive departments and agencies… to the extent permitted by law, ensure that contracts

and contract-like instruments… include a clause that the contractor and any subcontractors… shall incorporate into lower-tier subcontracts." The executive order further stated that the contract clause "shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force…" Finally, the executive order requires that the "clause shall apply to any workplace locations… in which an individual is working on or in connection with a Federal Government contract or contract-like instrument…"

13. On September 24, 2021, the Safer Federal Workforce Task Force issued its "COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors." This guidance requires "COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation…" by December 8, 2021.

**Norfolk Southern's Unilateral Change to the Terms and Conditions of Employment and Direct Dealing With Employees**

14. On October 18, 2021, Norfolk Southern held a conference call via Microsoft Teams between numerous management officials of Norfolk Southern and officials representing SMART-TD and other unions representing employees at Norfolk Southern. Norfolk Southern Vice President of Safety and Environmental Helen Hart ("VP Hart") informed the union representatives that Norfolk Southern would be mandating vaccines shortly on the basis that they are a government contractor subject to the executive order. VP Hart further stated that the mandate requirements and forms for requesting accommodations would be rolled out on October 20, 2021. Further, Norfolk Southern announced that it was unilaterally offering craft employees $300 for those vaccinated by December 8, 2021.

15. A subsequent call between Norfolk Southern management and union representatives was held on October 19, 2021. There, Norfolk Southern Vice President of Labor Relations Jason Morris informed union representatives that employees failed to meet the vaccine requirement or obtain an accommodation, they would be charged with failure to follow instructions and would not be permitted on Norfolk Southern property after December 8, 2021.

16. On October 20, 2021, Norfolk Southern issued a statement entitled "Federal Vaccine Mandate Will Require Change in NS Policy." Norfolk Southern stated that it considered itself covered under the executive order and that guidance issues by the Safer Federal Workforce Task Force, and that it was therefore "obligated by law to require vaccinations for our employees." Norfolk Southern further stated that employees must provide their vaccination status by November 8, 2021, and noted that the deadline to be fully vaccinated is December 8, 2021.

17. At no point prior to Norfolk Southern's statement on October 20, 2021, did Norfolk Southern bargain with SMART-TD over its unilateral implementation of its vaccine mandate nor the effects of said implementation, including bonus payments to employees, time off to get vaccinated or for side effects related to vaccination, or the consequences for employees who are not vaccinated by December 8, 2021.

18. On October 21, 2021, Norfolk Southern filed its Complaint in this matter, seeking, in part, that the Court issue declaratory judgment that the dispute over Norfolk Southern's vaccine mandate is a minor dispute within the meaning of the RLA.

19. On October 27, 2021, Norfolk Southern issued an official bulletin to all employees. This bulleting, entitled "OB-21", noted important dates for complying with Norfolk Southern's vaccine mandate. It noted that by November 8, 2021, employees were to upload their

vaccination status to Norfolk Southern electronically and that any request for an accommodation were to be made. It also stated that December 8, 2021, was the deadline for employees to be fully vaccinated, meaning at least two weeks after the last dose of an approved vaccine.

20. By letter dated October 28, 2021, SMART-TD officers objected to Norfolk Southern's actions and demanded a meeting to discuss the matter.

### COUNT ONE – VIOLATION OF EXISTING AGREEMENTS AND THE RLA'S STATUS QUO REQUIREMENTS

21. SMART-TD incorporates by reference as if fully set forth herein each allegation of the preceding paragraphs.

22. Section 2 First of the RLA provides:

> It shall be the <u>duty of all carriers, their officers, agents, and employees to **exert every reasonable effort to make** and maintain **agreements** concerning rates of pay, rules, and working conditions</u>, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First (emphasis added).

23. Under Section 2 of the Railway Labor Act, Norfolk Southern is required to bargain in good faith with the duly certified representative of the employees, SMART-TD, regarding hours, wages, and terms and conditions of employment.

24. Norfolk Southern's unilateral implementation of the vaccine mandate, which will result in the discipline up to and including dismissal of any employee who is not fully vaccinated by December 8, 2021, results in a unilateral change to the terms and conditions of employment of employees represented by SMART-TD.

25. This unilateral change and Norfolk Southern's refusal to bargain over it violates Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156, entitling SMART-TD to declaratory and injunctive relief.

## COUNT TWO – VIOLATION OF OBLIGATION TO BARGAIN OVER EFFECTS OF VACCINE MANDATE

26. SMART-TD incorporates by reference as if fully set forth herein each allegation of the proceeding paragraphs.

27. Norfolk Southern's vaccine mandate has imposed changes to the working conditions of its employees represented by SMART-TD.

28. Assuming *arguendo* that Norfolk Southern had the right to issue its vaccine mandate, it remains that it had the obligation to bargain with SMART-TD over the effects of the mandate following SMART-TD's demand that bargaining take place.

29. Norfolk Southern's failure to bargain with SMART-TD over the vaccine mandate's effects on the employees it represents violations Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156.

## COUNT THREE – VIOLATION OF THE RLA'S PROHIBITION AGAINST DIRECT DEALING

30. SMART-TD incorporates by reference as if fully set forth herein each allegation of the proceeding paragraphs.

31. Section 2 Third states:

> <u>Representatives</u>, for the purposes of this chapter, <u>shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives</u>. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

45 U.S.C. § 152, Third (emphasis added).

32. Section 2 Fourth states, in pertinent part:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing… <u>No carrier</u>, its officers, or agents <u>shall</u>

> deny or in any way question the right of its employees to join, organize or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, . . . or to influence or coerce employees in an effort to induce the them to join or remain or not to join or remain members of any labor organization.

45 U.S.C. § 152, Fourth (emphasis added).

33. In addition to the duty to bargain in good faith required by Section 2 of the Railway Labor Act, Norfolk Southern is prohibited from directly dealing with SMART-TD's members regarding hours, wages, and terms and conditions of employment.

34. Norfolk Southern's unilateral decision to pay a $300 bonus to vaccinated employees violates the RLA's prohibition against direct dealing in violation of the RLA, 45 U.S.C. § 151 *et seq.*

35. The non-negotiated bonuses and unilateral decision to discipline employees who are not vaccinated functioned to undermine the collectedly-bargained agreements and reduce Norfolk Southern's obligations under those agreements.

36. Neither the National Railroad Adjustment Boards nor Public Law Boards have the power and authority to order an appropriate remedy, leaving SMART-TD unable to enforce its statutory rights in any venue other than federal court.

**WHEREFORE,** SMART-TD requests that this Court:

1. Issue a Declaratory Judgment that Norfolk Southern's actions unlawfully change the status quo and violate the carrier's obligations under the RLA;

2. Issue injunctive relief enjoining Norfolk Southern, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with it who receive actual notice from violating the RLA; and

3. Award SMART-TD its costs and attorney's fees incurred is this proceeding, and grant SMART-TD such other and further relief as the Court deems just and proper.

Respectfully submitted,

Shawn M. McKinley
Assistant General Counsel
Kevin C. Brodar
General Counsel
SMART-Transportation Division
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
Tel: (216) 228-9400
Fax: (216) 228-0937
kbrodar@smart-union.org
smckinley@smart-union.org

and

/s/ Robert E. Harrington, III
Robert E. Harrington, III
DUNN HARRINGTON LLC
22 W. Washington St., Suite 1500
Chicago, Illinois 60602
Tel: (312) 548-7221
Fx: (312) 548-7223
E-mail: reh@dhinjurylaw.com

## **VERIFICATION**

I, David W. Phillips, certify under penalty of perjury, that I am a General Chairperson for Plaintiff SMART-TD, with responsibilities including negotiating and enforcing collective-bargaining-agreements with Norfolk Southern Railway Company, and that I am familiar with the matters stated in the foregoing Complaint, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

                                                    /s/ David W. Phillips
                                                    David W. Phillips

## **CERTIFICATE OF SERVICE**

      I certify that on October 29, 2021, I electronically filed the Answer and Counterclaim with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                    /s/ Shawn M. McKinley
                                    Shawn M. McKinley